UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT BRET LAFERRIERE,<br><br>                Plaintiff,<br>    v.<br><br>JENEFFER BALTZWELL, et al.,<br><br>                Defendants. | Case No. 3:21-cv-05175-RAJ-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for <u>March 15, 2024</u> |

This matter is before the Court on Defendants' filing of a motion for summary judgment[1]. Dkt. 26. Plaintiff[2] brought suit under 42 U.S.C. § 1983 against Defendants for allegedly violating Plaintiff's First and Fourteenth Amendment rights. Plaintiff seeks damages, and injunctive relief. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court should GRANT Defendants' motion and DISMISS Plaintiff's complaint with prejudice.

---

[1] Plaintiff did not file a response to Defendants' motion for summary judgment.

[2] Plaintiff identifies as transgender. Her name is Sophia Alexandra LaFerriere.

REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an inmate at Stafford Creek Corrections Center. Dkt. 5 (Complaint). On May 4, 2020, Plaintiff wrote a kite to Defendant Wakeman, a Chaplain at Stafford Creek Corrections Center, asking if she could order a Satanic Bible. Specifically, she wrote:

> I would like to order a satanic bible, I got money, I'm long-term Ad seg, I've been here for over 47 days. I.M.U. Offender handbook states, page 12, afforded an opportunity to practice your chosen religion, I would like the order form from union supply. Then I'll return it to you…Please contact C.U.S. Ms. Baltzell in I.M.U. Please keep correspondence. Please and thank you. Please respond in print. Thank you. My bible got damaged, so I'm reordering.

See Dkt. 5 at 10. Defendant Wakeman responded on May 6, 2020, and informed Plaintiff that she should speak with her unit Custody Unit Supervisor ("CUS") about this request. See id.

On the same day Plaintiff wrote a kite to Defendant Wakeman, she also sent one to Defendant Baltzell[3], the Custody Unit Supervisor ("CUS") for the Restrictive Housing Unit ("RHU"). See Dkt. 5 at 9. See also Dkt. 27 (Declaration of Stefanie Baltzell) at ¶2. She asked Defendant Baltzell for an order form so that she can purchase a Satanic Bible. Defendant Baltzell responded on May 5, 2020, stating "I am not the unit library please submit a kite to the library." Dkt. 27, at ¶ 4; Dkt. 5, at 9. Defendant Baltzell claims that she understood Plaintiff's kite as a request for information about how Plaintiff would be able to obtain the bible from the correctional center's library. Dkt. 27, at ¶ 4.

On May 8, 2020, Plaintiff wrote a kite to Defendant Manio requesting a Satanic Bible. See Dkt. 5 at 13. She explained, "my mother cannot afford me one. She is low

---

[3] Plaintiff identified defendant "Jeneffer Baltzwell", but the accurate name is "Stefanie Baltzell". See Dkt., 27, Declaration of Stefanie Baltzell.

REPORT AND RECOMMENDATION - 2

income. The rituals will release my pent up emotions I have and balance my mind from the covid 19. Can I please have permission to order a satanic bible while I'm in the I.M.U." *Id.* An individual who is not Defendant Manio responded to Plaintiff's kite on May 15, 2020, informing Plaintiff that she should contact Chaplain Wakeman for her request. *Id.*

On July 1, 2020, Defendant Baltzell sent an email to the F-Unit Property Officer and asked whether Plaintiff, who was still in segregation, would be able to order a Satanic Bible from Union Supply. *Id.* at ¶5. *See also* Dkt. 27 at Exhibit 1. Union Supply is a private vendor that sells books to incarcerated individuals. *Id.* at ¶8. Defendant Baltzell sent this email after receiving a phone call from Defendant Wakeman notifying her that Plaintiff was requesting a Union Supply Order Form. *Id.* On July 2, 2020, the F-Unit Property officer responded to Defendant Baltzell's email stating, "[o]ffenders are not allowed to order Union Supply while in Segregation. A family member can order it for him from a vender [sic]." *Id.* at ¶6.

It was Union Supply's policy to not accept orders from RHU residents. *Id.* at ¶8. Defendant Baltzell forwarded this response to Defendant Wakeman and informed Plaintiff that she can send money from her spendable to her family to order the bible from Union Supply. *Id.* at ¶7.

Defendant Baltzell states that in circumstances where a RHU inmate is unable to order a book from Union Supply, they can still get access to the book if there is a donated copy available. In this case, there was not a donated copy of the Satanic Bible available for Plaintiff. *Id.* at ¶8. Defendant Baltzell also asserts that copies of information

REPORT AND RECOMMENDATION - 3

1  regarding Plaintiff's religion were provided by Chaplain Wakeman and Ms. Baltzell to
2  plaintiff on July 27, 2020. *Id.* at ¶9.
3      Finally, Plaintiff's property matrix indicated that she had a Satanic Bible since
4  March 28, 2019, in her general population housing unit. Dkt. 27, Exhibit 2 at p.8.
5  Defendant Baltzell states that had Plaintiff requested the RHU property officer to
6  retrieve her own copy from general population, they would have done so. *Id.* at ¶10.
7      Plaintiff currently resides in general prison population. *Id.* at ¶11.

DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Yet the Court is not allowed to weigh evidence or decide credibility.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of their pleading; their response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012).

### B.  42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff must show that each named defendant, through their own individual acts or omissions, violated Plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S.

662, 676 (2009). Liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Supervisory prison officials may be liable under § 1983 if they were 'personally involved in the constitutional deprivation or a sufficient causal connection exists between [their] unlawful conduct and the constitutional violation.' " *Rico v. Ducart*, 980 F.3d 1292, 1303 (9th Cir. 2020) (quoting *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013)). "This causal connection can be established by 'knowingly refusing to terminate a series of acts by others, which the supervisor[s] knew or should have known would cause others to inflict a constitutional injury.' " *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).

### C. Plaintiff's First Amendment Claim

Plaintiff claims Defendants violated her First Amendment right to free exercise for failure to provide her with a Satanic Bible.

The First Amendment provides that the government shall not prohibit the free exercise of religion. U.S. Const. Amend. I. Nevertheless, a prisoner's First Amendment free-exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

A prisoner must demonstrate a substantial burden to a sincerely held religious belief to prove a violation of their First Amendment right to free exercise of religion. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). To be considered a substantial

burden to an individual's religion, the government's interference must be more than an inconvenience, *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), an isolated incident, or a short-term occurrence. *See Canell v. Lightner*, 143 F.3d 1210,1215 (9th Cir. 1998) (interference that is relatively short-term and sporadic was not substantial).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The Court must consider four factors to determine if the regulation at issue is reasonably related to a legitimate penological interest: (1) if there exists a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it[;]" (2) "whether there are alternative means of exercising the right that remain open to the inmate[;]" (3) "the impact accommodation of the asserted constitutional right will have upon guards and other inmates, and on the allocation of prison resources[;]" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* (internal citations omitted).

To prove a successful claim under the First Amendment, a plaintiff must show (1) that defendants' conduct violated plaintiff's sincerely held religious belief, and (2) that such conduct posed a substantial burden to that belief. *Shakur*, 514 F.3d at 884.

Here, there is no issue of material fact as to the sincerity of Plaintiff's religious beliefs. Plaintiff, however, has not put forth evidence to show that Defendants placed a substantial burden on Plaintiff's sincerely held religious beliefs. The record, when reviewed in the light most favorable to Plaintiff, shows Defendants have offered evidence that they did not deliberately fail to provide Plaintiff with a Satanic Bible.

REPORT AND RECOMMENDATION - 7

1  Defendant Baltzell, for example, claims that when she received Plaintiff's kite dated May
2  4, 2020, she thought Plaintiff was asking her how to get a Satanic Bible from the library.
3  Dkt. 27 at ¶4. Defendant Baltzell followed up with an F-Unit Property Officer to inquire if
4  Plaintiff can order a Satanic Bible from Union Supply. *Id.* at ¶5. Furthermore, Defendant
5  Baltzell states that she provided Plaintiff physical papers containing information that
6  Chaplain Wakeman had available on her religion on July 27, 2020. *See id.* at ¶9.
7  Plaintiff has not provided evidence to show that Defendant Baltzell's acts or omissions
8  relating to Plaintiff's request created a substantial burden for Plaintiff.
9        Similarly, Defendant Wakeman and Defendant Manio gave Plaintiff information
10 about who she should contact to receive a Satanic Bible. On May 6, 2020, Defendant
11 Wakeman informed Plaintiff that she should speak with her Custody Unit Supervisor
12 about her request. Further, although Plaintiff's May 8, 2020, kite was directed to
13 Defendant Manio, Defendant Manio was not the officer that responded to Plaintiff on
14 May 15. Moreover, the officer's response was simply informing Plaintiff about who to
15 contact to address her request. Plaintiff has failed to show that the Defendants'
16 responses to Plaintiff's kites caused a substantial burden on her religious exercise.
17        None of Defendants' actions put "substantial pressure" on Plaintiff to "modify her
18 behavior and to violate her beliefs." *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir.
19 2015).
20        Because Plaintiff has failed to provide evidence that Defendants' conduct posed
21 a substantial burden to her religious beliefs, Defendants' summary judgment as to
22 Plaintiff's First Amendment claim should be GRANTED.
23        **D.  Plaintiff's Fourteenth Amendment Claim**
24
25

REPORT AND RECOMMENDATION - 8

1      Plaintiff generally claims that Defendants violated her Fourteenth Amendment
2 right to due process. Dkt. 5 at 11.
3      The Due Process Clause of the Fourteenth Amendment protects prisoners from
4 being deprived of life, liberty, or property without due process of law. *Wolff v.*
5 *McDonnell,* 418 U.S. 539, 556 (1974). "The requirements of procedural due process
6 apply only to the deprivation of interests encompassed by the Fourteenth Amendment's
7 protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972).
8      State statutes and prison regulations may grant prisoners liberty interests
9 sufficient to invoke due process protections. *Meachum v. Fano,* 427 U.S. 215, 223–27
10 (1976). However, the Supreme Court has significantly limited the instances in which due
11 process can be invoked. Pursuant to *Sandin v. Conner,* 515 U.S. 472, 483 (1995), a
12 prisoner can show a liberty interest under the Due Process Clause of the Fourteenth
13 Amendment only if he alleges a change in confinement that imposes an "atypical and
14 significant hardship ... in relation to the ordinary incidents of prison life." *Id.* at 484; *Neal*
15 *v. Shimoda,* 131 F.3d 818, 827–28 (9th Cir.1997).
16      Therefore, to establish a due process violation, a plaintiff must first show the
17 deprivation imposed an atypical and significant hardship on him in relation to the
18 ordinary incidents of prison life. *Sandin,* 515 U.S. at 483–84. A plaintiff must allege "a
19 dramatic departure from the basic conditions" of his confinement that would give rise to
20 a liberty interest before he can claim a violation of due process. *Id.* at 485; *see also*
21 *Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996), amended by 135 F.3d 1318 (9th
22 Cir.1998).
23
24
25

Plaintiff has not alleged any facts to support a claim that she was deprived of a protected interest without procedural due process nor has she identified the process she believes would have been legally required. Defendants motion for summary judgment on this claim should, therefore, be GRANTED.

### E. Qualified Immunity

The Court should also grant Defendants' motion for summary judgment with respect to Plaintiff's request for damages because the Defendants are entitled to qualified immunity. Unless a plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: (a) that the official(s) violated a federal statutory or constitutional right and (b) that—at the time of the alleged act or failure to act—there was clearly established law that defined the contours of the federal right, such that every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkson,* 883 F.3d 865, 871-72 (9th Cir. 2018).

REPORT AND RECOMMENDATION - 10

As discussed above, viewed in the light most favorable to Plaintiff, the facts do not show that Defendants' acts violated plaintiff's Constitutional rights. Accordingly, Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

**F. Injunctive Relief**

In addition to monetary damages, Plaintiff also requests the "Religious material [she] requested" and "for this material to be available to all incarcerated persons." Dkt. 5 at 16. When a prisoner seeks injunctive relief concerning conditions at a prison, the prisoner's claims for prospective injunctive relief are moot when the prisoner is "no longer subject to the prison conditions or policies he challenges." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). Plaintiff currently resides in the general prison population, and therefore has access to the Satanic Bible already in her possession according to her property matrix, or she can purchase a Satanic Bible from Union Supply because she is no longer in RHU. Dkt. 27, at 4, ¶ 11. Further, to extent the material provided by Defendants Wakeman and Baltzell in July 2020 is the "religious material" Plaintiff is referring to, Plaintiff's claim for injunctive relief is again, moot. Plaintiff has failed to present evidence that she has yet to receive "religious material."

With respect to Plaintiff's request "for this material to be available to all incarcerated persons," Plaintiff does not have standing to seek injunctive relief on behalf of other persons. *Johns v. County of San Diego,* 114 F.3d 874, 876 (9th Cir. 1997); *United States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (*pro se* litigant does not have standing to raise the claims of other persons whose rights may have been violated).

Thus, Plaintiff is not entitled to injunctive relief, and the Court should grant summary judgment in favor of the defendants on those claims for relief.

## IN FORMA PAUPERIS STATUS ON APPEAL

The Court must also decide whether Plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

While the Court was not persuaded on the merits of Plaintiff's claim, there is no evidence that her appeal is frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

REPORT AND RECOMMENDATION - 12

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court GRANT Defendants' motion for summary judgment and DISMISS Plaintiff's complaint with prejudice. A proposed order and proposed judgment are attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on March 15, 2024, as noted in the caption.

Dated this 28th day of February, 2024.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13